214 N.J. Super. 278 (1986)
518 A.2d 1122
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
D.R.,[1] DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 19, 1986.
Decided December 16, 1986.
*280 Before Judges FURMAN, DREIER and STERN.
Alfred A. Slocum, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Larry R. Etzweiler, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant was convicted of aggravated sexual assault, N.J.S.A. 2C:14-2a; sexual assault, N.J.S.A. 2C:14-2b; and impairing and debauching the morals of a child, N.J.S.A. 2C:24-4a. He was sentenced to concurrent terms of 15 years, seven years and four years on the respective counts, and assessed a Violent Crimes Compensation Board penalty of $75. The victim was defendant's 2 1/2-year-old granddaughter.
After an acrimonious divorce, defendant's son and his family were given substantial visitation rights concerning the victim, N.R. The visitation order of April 1983 envisioned that the father's parents, defendant and his wife, would babysit two days a week while the mother was at work, and that this visitation would take place at defendant's home. N.R. would stay at her grandparents' home from Friday morning through Saturday evening.
In December 1983 the victim's mother noted a change in the child's behavior. She began complaining that her "peepee" hurt and that it burned when she went to the bathroom or took a bath. The child would scream and cry if the mother even attempted to put cream on it. During the next month both the mother and another babysitter noted that the child's sleeping patterns had become disturbed and that she would awaken screaming in the middle of the night or from her afternoon nap. The child would not respond when asked what was bothering *281 her. Due to this behavior the mother immediately scheduled the child's upcoming six-month examination with her pediatrician. Alerted by the mother to the possibility of sexual abuse, the pediatrician focused his examination on the analvaginal area and found no bruises, marks, irritation or signs of infection. Due to N.R.'s young age, the pediatrician thought it physically impossible that there had been anal or vaginal penetration, but felt it "imperative" that the mother contact the Division of Youth and Family Services (DYFS) and insisted that the call be made before the mother left his office. DYFS immediately commenced its investigation, and the mother ceased having the child go to her paternal grandparents for visitation. Both the mother and her babysitter, a cousin of the mother, noticed that the symptoms subsided within weeks after this visitation ceased.
On February 9, 1984, after the victim indicated sexual activities with defendant, Detective Mazzei of the Somerset County Prosecutor's Office met with defendant for the purpose of discussing these allegations. After being given his Miranda rights, defendant initially denied that he had been sexually involved with N.R. Mazzei then showed defendant a drawing of a female child and male child, with circles around the female genital area and the male child's chest. The detective told defendant that the child circled these areas, alleging where defendant had kissed her and where she had kissed him. Furthermore, defendant was told that the detective had a tape recording of N.R.'s allegations and that it would be played for defendant if he wanted to hear it. Defendant exhibited no interest in hearing the tape. Mazzei then asked defendant to explain how such a young child could make the markings contained in the drawings and provide the statements on the tapes. Defendant responded by asking what would happen if he denied the acts. Mazzei explained that the investigation would continue and if enough evidence developed, the matter would be presented to a court and the child would be brought in to tell her side of the story. Defendant then became sullen, put *282 his head down, and after not saying anything for a minute or two, told Mazzei what had transpired[2].
According to Mazzei, defendant explained that one morning in January 1984 he arrived at home approximately 12:30 a.m., after having a few drinks. N.R. indicated that she needed to go to the bathroom and defendant assisted her. After she completed a bowel movement, defendant wiped her behind and vaginal area. While doing this and sitting on the edge of the tub, his penis became exposed. N.R. asked him what it was and he replied that it was his penis and asked her if she would like to touch it. She did so and defendant then asked her if she would like to kiss Grandpa's penis. He let her do so. Mazzei at that point terminated the informal interview and decided to obtain a formal taped statement which defendant agreed to give. Defendant was again advised of his Miranda rights and the taped statement was given which expanded upon the original informal statement. Defendant further noted that when he placed N.R. on his lap to aid her in pulling up her pants, his penis touched her vagina. He also admitted placing his penis in the child's mouth, but denied ejaculating.
Defendant testified in his own behalf. He stated that after being told of N.R.'s allegations of a sexual assault and being confronted with the drawings and taped statement, he still denied committing any sexual offense. However, upon being informed that his wife and the child would be brought in for questioning, and knowing that his wife had previously been hospitalized for nervous breakdowns, he agreed to give a taped statement. This agreement, however, was in response to Mazzei's *283 assertion that if defendant gave the statement the investigation would be over. He, therefore, concocted the statement; his reasons for falsifying being that he did not wish his granddaughter or wife to be brought in for questioning. He claimed that the details on the tape were suggested by Mazzei, not in so many words, but at least by suggesting the areas that should be encompassed by the testimony.
One of the main witnesses for the State was Dr. Martin Krupnick, a clinical psychologist specializing in the field of incest and childhood sexual assaults. He interviewed N.R. three times in September 1984. During at least one of these interviews N.R. was given anatomically correct dolls to facilitate her expressing herself concerning what had occurred. These dolls previously had been used by the prosecutor's office, and, in fact, N.R. had given them the names of "Grandpa [R]" and "baby [N]." Dr. Krupnick testified that N.R. was suffering an acute phase of a "post-traumatic stress disorder." This disorder was triggered by a major traumatic event outside of the normal human experience, namely a sexual assault. He further acknowledged that the child's description of what had occurred might have been the result of prompting arising from the marital discord, but that such a diagnosis was inconsistent with the behavior exhibited by N.R. He noted specifically:
Q. Other than her behavior that was reported to you, you say that you noticed specific behavior of hers yourself when you examined her that you felt was significant in formulating your diagnosis?
A. Yes. When using the anatomically correct dolls  these are dolls that are used to allow a child to facilitate an expression of what has gone on in her past experience, and using these anatomically correct dolls, she was able to act out and demonstrate a sexual assault, specifically talked about the penis being placed in the mouth of the young female.
During that time she showed a lot of anxiety, fear. She was very uncomfortable and requested that we terminate rather quickly from that part of the examination.
Q. Did she use the doll as a specific person?
A. Yes. She named the male doll Grandpa [R] doll and the female doll baby [N].
*284 At a voir dire hearing the victim was determined incompetent to testify. She was but three years old at the time of the trial, and, although the trial judge tested her competency using appropriate audio-visual insulation from the courtroom setting, he determined that she was incapable of dealing with the concept of lying and telling the truth, and it was inappropriate for her to testify[3]. State in the Interest of R.R., 79 N.J. 97, 113-14 (1979). We here determine, however, that such a finding would not preclude the substantive admission of her statements to the doctor.
Defendant has raised three issues on appeal:
POINT I
The trial court committed plain error by not charging the jury as to the limited admissibility of the basis underlying the expert witness's opinion. (Not raised below).
POINT II
The sentencing court clearly abused its discretion by imposing a manifestly excessive sentence.
POINT III
The conviction for sexual assault and the conviction for endangering the welfare of a child must be vacated, as they merge with the aggravated sexual assault conviction. (Partially raised below).

I

A. Use of Statements as Basis for Expert's Opinion.

Absent Dr. Krupnick's testimony, the sole evidence against defendant was his confession to the detective. It is firmly established in our law that "an uncorroborated extra-judicial confession cannot provide the evidential basis to sustain a conviction for crime." State v. Lucas, 30 N.J. 37, 51 (1959). The corroboration required by Lucas is merely that there be "independent corroborative proof tending to establish that *285 when the defendant confessed he was telling the truth, plus independent proof of the loss or injury." Id. at 58. Apart from N.R.'s incapacity to testify at trial, she still had the ability to relate to another her feelings of anxiety and recollections of events that had transpired. Even though the child may not have had testimonial capacity, she was capable of expressing herself. See cases collected in Annotation, "Admissibility of Testimony Regarding Spontaneous Declarations by One Incompetent to Testify at Trial," 15 A.L.R.4th 1043 (1982). She was described as a bright and alert little girl. Her demonstration of knowledge of sexual practices, reasonably expected to be foreign to a child of her years, accompanied by the expert interpretation of Dr. Krupnick, could be considered a sufficient basis for Dr. Krupnick to form an opinion as to the child's psychological condition and its sexual cause. Evid.R. 56(2) permits a qualified expert to give his opinion based upon facts or data which themselves may not be admissible.
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
From a review of N.R.'s statements to him, reinforced by her reference to the anatomically correct dolls, Dr. Krupnick was qualified to and was able to give an opinion that N.R. had been the subject of a sexual assault of a particular type. Even if there is no hearsay exception to justify the statements of the child to the doctor, or if there is no other basis for their admission, the doctor's testimony still would stand for the proposition that N.R. suffered from the acute phase of a sexually based post-traumatic stress disorder. The confession would thus have been corroborated by proof of an injury to the child compatible with the results of the acts described in the confession.

B. Requirement of Limiting Charge.

One answer to defendant's present hearsay objection would be for us to note his counsel's failure to object at the time of *286 trial, and then find a lack of plain error. R. 2:10-2. Defendant acknowledges that the issue was not raised below. Had the objection been raised the included statements of the child might not have been received substantively. The court either could have stricken reference to defendant's acts as the cause of the disorder or the jury could have been instructed that it should limit its consideration of the child's story to the assessment of the reasonableness of the doctor's opinion of the disorder. Evid.R. 6. Such a non-substantive use requires an instruction concerning limited admissibility:
When relevant evidence is admissible ... for one purpose and is inadmissible ... for another purpose, the judge shall restrict the evidence to its proper scope and instruct the jury accordingly. [Evid.R. 6].
Since there was no objection, we are required to determine under R. 2:10-2 whether the judge's failure to give the mandatory limited admissibility instruction, if required, would have been error, and if so, whether such error would have been "of such a nature as to have been clearly capable of producing an unjust result." Treating the second question first, since the child's statements to the doctor were not merely "make-weight" additions to the doctor's opinions, and, after defendant's confession, were probably the most damaging evidence in the case, a failure to limit the use of N.R.'s statements, if such limitation were required, could hardly be called harmless.
To sustain this verdict we must find that N.R.'s statement need not have been excluded substantively, i.e. that the statements by Dr. Krupnick of N.R.'s statements and behavior constituted not merely the basis for his opinion, but were themselves admissible either as not constituting hearsay, or as hearsay statements supported by a hearsay exception.

C. Characterization of Statement as Nonassertive; Contemporaneous Statement Exception.

Under Evid.R. 62(1), a "statement" is either an oral or written expression, or a "non-verbal conduct of a person intended *287 by him as the substitute for words in expressing the matter stated." If N.R. was merely observed playing with the dolls and causing them to engage in simulated sexual activity giving the names she did to each doll, Dr. Krupnick's relating of this play would have been free of any proper hearsay objection. This nonassertive conduct and accompanying statements would not have been intended as expressing the truthfulness of the matter to another. Cf. In re Dependency of Penelope B., 104 Wash.2d 643, 709 P.2d 1185, 1190-1192 (1985). During his initial description of his observation of the child, Dr. Krupnick stated that when N.R. entered his office she went directly to the dolls, undressed them and placed the male doll's penis in the mouth of the female doll. Her naming of the dolls, although damaging to defendant through the permissible inferences to be made by the jury, State v. Reyes, 50 N.J. 454, 459 (1961), might possibly not be considered hearsay, since it could be found not to have been intended by the child as a means to express her recollection of the past events to him. But see Matter of Rinesmith, 144 Mich. App. 475, 376 N.W.2d 139, 141-42 (Ct.App. 1985). She merely was describing a part of her game with the dolls, and that their names were "Grandpa [R]" and "Baby [N]."
Similarly, we could characterize these statements by finding that to her these were contemporaneous statements within the confines of her play. Evid.R. 63(4)(a). She merely was stating that to her at the time, the dolls were being given the names of "Grandpa [R]" and "Baby [N]." The psychologist or the jury would then make the inference that the child's play mirrored the earlier offense. State v. Reyes, supra. The statements, therefore, could be deemed admissible as falling within the contemporaneous statement exception. Evid.R. 63(4)(a).
It would strain the fabric of the hearsay rule for the statements to be admitted either as non-hearsay or admitted under Evid.R. 63(4)(a). The fair import of the doctor's testimony was that the child was telling him what her grandfather had done to her, and that the dolls were but a medium of expression. *288 Matter of Rinesmith, supra. An over-technical analysis of the evidence point could yield admissibility, but destroy much of the practical usefulness of the hearsay rule. Even with limiting instructions, the jury would hear the testimony and most probably would use the information for its pure hearsay purpose, i.e. that the child told the doctor that her grandfather committed the sexual assault. The court might well have been required to have excluded the statements, since their limited proper probative force would have been substantially outweighed by their undue prejudicial effect. Evid.R. 4. And in any event, admission of the statements for the purpose of the child's contemporaneous description of her game would have required limiting instructions under Evid.R. 6, similar to that required if the statements were admitted solely to show the basis for the doctor's opinion. We, therefore, must further analyze the bases for the statements' admissibility.

D. Inadequacy of Spontaneous Declaration Exception Common-law and Legislative Alternatives.

The closest recognized hearsay exception that could justify the general admission of the statement as one describing the past conduct is Evid.R. 63(4)(b), admitting spontaneous utterances. We recognize that this court in State in the Interest of C.A., 201 N.J. Super. 28, 32-34 (App.Div. 1985), declined to apply or expand this exception on facts similar to those before us[4]. *289 Evid.R. 63(4)(b) permits admission of spontaneous statements made "while a declarant was under the stress of a nervous excitement caused by" the perception of an event or condition, in reasonable proximity to the event and "without the opportunity to deliberate or fabricate." We there noted:
A court may make allowances for a child's youth and naivete in extending the time during which the nervous excitement continues to enhance the reliability of the statement. State v. Padilla, 110 Wis.2d 414, 417, 329 N.W.2d 263, 266 (Wis. Ct. App. 1982). A child's youth and naivete, however, are not substitutes for the stress of a nervous excitement, which is the basis for the hearsay exception. [201 N.J. Super. at 33].
Accord: Brown v. United States, 152 F.2d 138 (D.C. Cir.1945); Smith v. United States, 215 F.2d 682, 683 (D.C. Cir.1954); Commonwealth v. Haber, 351 Pa.Super. 79, 505 A.2d 273, 274-276 (Super. 1986); Oldham v. State, 167 Tex.Crim. 644, 646, 322 S.W.2d 616, 618 (Ct.Crim.App. 1959).
We note, however, that this reading of the rule is more restrictive than that employed by many courts. Both the time and nervous stress factors are frequently relaxed. See e.g., Smith v. State, 6 Md. App. 581, 252 A.2d 277, 280-81 (Ct.App. 1969); State v. Ritchey, 107 Ariz. 552, 555, 490 P.2d 558, 561 (1971); State v. Noble, 342 So.2d 170, 172-73 (La. 1977). Cf. State v. Millwood, 254 Ga. 536, 333 S.E.2d 371, 372 (1985), a procedural decision declining to review defendant's conviction to which there is a vigorous dissent urging adoption of a new hearsay exception for statements of child victims of sexual abuse. Michigan, prior to its adoption of the Michigan Rules of Evidence, had gone so far as recognizing a generalized "tender years exception" to the hearsay rule. People v. Gage, 62 Mich. 271, 275, 28 N.W. 835, 836-37 (1886). The rule no longer exists in Michigan. People v. Kreiner, 415 Mich. 372, 329 N.W.2d 716, 717 (1982). And see State v. Superior Court, Pima County, 149 Ariz. 397, 719 P.2d 283, 288-291 (Ct.App. 1986) (interpreting statute creating new hearsay exception for statements *290 of child victims); State v. Myatt, 237 Kan. 17, 697 P.2d 836, 841-845 (1985) (same); People in the Interest of O.E.P., 654 P.2d 312, 317-319 (Colo. 1982) (same); State v. Nelson, 725 P.2d 1353 (Utah 1986) (same); State v. Robinson, 44 Wash. App. 611, 722 P.2d 1379 (Ct.App. 1986) (same).
In many cases a young child's inexperience with sexual matters removes the "stress of nervous excitement" required by Evid.R. 63(4)(b), but in no way removes the inherent reliability of the statement. See Note, "A Comparative Approach to Child Hearsay in Sex Abuse Cases," 83 Colum.L.Rev. 1745, 1755-1759 (1983). The author first notes the major problem of requiring "stress of nervous excitement":
The major weakness of the exception in this context stems from its undue reliance on spontaneity as an indicator of trustworthiness, to the exclusion of other equally valid indicia of reliability. This emphasis on spontaneity is improper for two reasons. First, most children do not view a sexual episode as shocking or even as particularly unusual. Children thus often do not recount the event with the shock or emotion required under the exception. Children are simply not as highly sexualized or moralized as adults. They may not know what has happened to them is wrong. This may be especially true if the child has not been involved in an incestuous relationship. A parental imprimatur on the entire situation may often cause the child to view everything as normal. A sexual incident may not be traumatic for other reasons as well. Often the victims themselves are searching for warmth and affection. `For some, it represents the first time they experience what they perceive to be recognition or special attention from the parent or parent figure.' Sexual relationships of substantial duration between children and adults are not uncommon.
This childhood perspective on sexual experiences naturally does not produce the shock or excitement that the law presumes to exist after such an event. Quite often, the incident is related as part of the day's activities without any indication from the child that it was traumatic or unusual. For example, in Brown v. United States, [152 F.2d 138 (D.C. Cir.1945)], the three-year-old victim calmly reported her assault in school that day during the course of normal dinner time conversation. The statement was subsequently excluded for lack of spontaneity.
Second, a significant delay frequently precedes the child's statement, thereby violating the time requirement of the spontaneous exclamation exception. Even when a child is aware of the nature of his or her assault, a report of the event may still not be instantly forthcoming. This delay may be caused by a variety of factors: the victim's fears of not being believed, feelings of confusion and guilt, efforts to forget, and threats against the victim by the defendant. Consequently, a child often keeps silent until something compels him or her to relate what has happened. For example, in one case the five-year-old victim *291 broke silence about his prior sexual assault to prevent being sent to the defendant's house again. [Id. at 1756-57; footnotes omitted].
The author further quotes from D. Finkelhor, Sexually Victimized Children 31 (1974) which, in turn quotes from A. Kinsey, Sexual Behavior in the Human Female 121 (1953):
[C]hildren have only a dim sense of adult sexuality. What may seem like a horrible violation of social taboos from an adult perspective need not be so to a child. A sexual experience with an adult may be something unusual, vaguely unpleasant, even traumatic at the moment, but not a horror story. Most children's sexual experiences involve encounters with fondlers and exhibitionists, ... and `it is difficult to understand why a child, except for its cultural conditioning, should be disturbed at having its genitals touched, or disturbed at seeing the genitals of other persons.' [Id. at 1756, n. 94.]
The author concludes, however, that in relaxing the "stress of nervous excitement" criterion:
... courts have virtually destroyed the integrity of the exception, stretching it far beyond its traditional bounds, and creating much uncertainty in its application. What courts are in fact doing is looking to various circumstantial guarantees of trustworthiness, of which spontaneity is just one. [Id. at 1759; footnotes omitted].
She suggests the adoption of an approach similar to that followed in a Washington statute, Wash. Rev. Code Ann. § 9A.44.120,[5] establishing a specific hearsay exception for child-declarant in sex abuse cases.
*292 As noted earlier, statutes have also been enacted in Arizona, Colorado, Kansas and Utah[6]. The Arizona statute is substantially similar to that of Washington. Colorado and Kansas have added requirements for a jury charge concerning the weight to be given to the child's Statement[7]. The Kansas statute, however, is applicable only if the child is disqualified or unavailable as a witness, and requires that the judge in determining the issue of admissibility consider whether "the statement is apparently reliable and the child was not induced to make the statement falsely by the use of threats or promises." Kan. Stat. Ann. § 60-460(dd) (1985 Cum.Supp.). Utah gives more discretion to the trial judge who is empowered to "determine whether the interest of justice will best be served by the admission of the statement." The factors to be considered by the judge are "the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, and the reliability of the assertion and of the child." Utah Code Ann. § 76-5-411(2) (1986 Cum.Supp.). A separate statute authorizes admission of visual recordings of statements or testimony of a child victim or witness of sexual abuse. § 77-35-15.5(1).
In the case before us, although N.R. was traumatized by her experience, her description of the sexual activity to Dr. Krupnick was not accompanied by evident "stress of nervous excitement" as required by Evid.R. 63(4)(b). There was related distress, but this was observed after the game with the dolls. *293 Also, the statements were made far removed from the act, some nine to ten months later.

E. A New Hearsay Exception.

We are thus faced with either excluding the substantive use of the statements or expanding upon the exceptions contained in the Rules of Evidence. Under the Federal Rules of Evidence, hearsay exceptions may grow under the express authority of Federal Evidence Rules 803(24) and 804(b)(5). Evid.R. 5 of the New Jersey Rules of Evidence provides:
The adoption of these rules shall not bar the growth and development of the law of evidence in accordance with fundamental principles to the end that the truth may be fairly ascertained.
The 1967 Commission Note states specifically that this rule "is not a rule of relaxation."[8] We do not seek here to relax the Rules of Evidence for a single case, but rather, as a matter of the common-law growth of evidence law, to recognize a hearsay exception heretofore unstated, but with sufficient indicia of reliability to warrant recognition.
It has not been definitively stated whether the Rules of Evidence are substantive law, and thus within the Legislature's province, or procedure, and thus within the courts' jurisdiction. Busik v. Levine, 63 N.J. 351, 367-68 (1973), cert. den. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973); Winberry v. Salisbury, 5 N.J. 240, 255 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950). Evidence law has even been called a "hybrid." Busik v. Levine, 63 N.J. at 367. See "Preface by the Commission, 1972 Edition," N.J.Rules of Evidence (Anno. 1986), at xiii; and Biunno, "Preliminary Comment to the Rules," Id. at xi. In State v. Phelps, 96 N.J. 500, 508 (1984), Justice Schreiber stated:

*294 A statement, made other than by a witness while testifying, offered to prove the truth of the content of the statement is hearsay evidence and is inadmissible unless it falls within one of the hearsay exceptions, most of which are found in R. 63(1) through 63(32). Evid.R. 63. The exceptions are justified primarily because the circumstances under which the statements were made provide strong indicia of reliability. [Emphasis added].
We note that Justice Schreiber did not limit the hearsay exceptions to the 32 enumerated in the Rules of Evidence when he stated that only "most" of the exceptions are to be found there. Indeed, others exist through statutes and the common law.
Notwithstanding some authority that the Evidence Rules are not to be expanded without the amending process being followed (see Biunno, supra, at xvii-xviii), the Courts and Legislature have each on occasion acted to meet a perceived need. In State v. Ginardi, 111 N.J. Super. 435, 455-56 (App.Div. 1970), aff'd o.b. 57 N.J. 438 (1971), although the majority eschewed establishing a new hearsay exception for a composite sketch made by a witness soon after an incident, Judge Conford in his dissent noted that, in effect, the majority had done so, and urged that such action be left to the Supreme Court and Legislature. 111 N.J. Super. at 459-60. In State v. Kennedy, 135 N.J. Super. 513, 521-525 (App.Div. 1975), Judge Botter determined that, notwithstanding the express rejection of a hearsay exception for a defendant's confession in a criminal case, such a common-law exception was to be recognized and applied[9]. In Raybestos-Manhattan, Inc. v. Glaser, 144 N.J. Super. 152, 169-171 (Ch.Div. 1976), aff'd 156 N.J. Super. 513 (App. Div. 1978), Judge Lenox noted that press releases, newspaper articles and other legislative history, although hearsay not encompassed by any recognized exception, is admissible to determine legislative intention or motivation as an aid to ascertain the meaning of a statute. And see N.J.Rules of Evidence (Anno. 1986), Comment 4 to Evid.R. 63.
*295 The Legislature in a circumstance similar to the one before us has already recognized the specific need for a "naivete" exception in some sexual abuse cases, and has enacted an evidential rule for application in proceedings for the termination of parental rights. N.J.S.A. 9:6-8.46a(4). In such hearings:
... previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect.
This statutory solution has been accepted by the courts. New Jersey Youth & Family Serv. Div. v. S.S., 185 N.J. Super. 3, 7 (App.Div.), certif. den. 91 N.J. 572 (1982). Other evidence rules not adopted in accordance with the amending process in the Rules of Evidence, N.J.S.A. 2A:84A-33 et seq., abound in the New Jersey Code Criminal Justice and elsewhere throughout the statutes. Cf. Rybeck v. Rybeck, 141 N.J. Super. 481, 509-10 (Law Div. 1976), app. dism. 150 N.J. Super. 151 (App.Div. 1976), certif. den., 75 N.J. 30 (1977); and the hearsay exception for the basis of real estate valuations by experts, N.J.S.A. 2A:83-1 (prior to the amendment of Evid.R. 56(2)).
It appears, therefore, that neither common-law nor legislative extension of the hearsay rule is absolutely precluded, and we consequently proceed, albeit with the greatest of caution.
The problem of the admissibility of a young child's statements to a parent or doctor in child abuse cases is not unique to New Jersey. By decisional law or legislative action, or both, various jurisdictions have met this issue by permitting, with various safeguards for reliability, admission of such hearsay statements of young children. See cases and statutes collected earlier in this opinion. Whether it is to be called a "naivete" or "tender years" exception or an extension of the excited utterance rule, when a child relates events such as these to a parent, health professional or other confidant,[10] we perceive a need for *296 such a recognized exception. See cases collected in Note, "The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations," 98 Harv.L.Rev. 806 (1985); and Note, "A Comparative Approach to Child Hearsay in Sex Abuse Cases," 83 Colum.L.Rev. 1745 (1983), discussed supra; and see Annotation, "Admissibility of Testimony Regarding Spontaneous Declarations Made by One Incompetent to Testify at Trial," 15 A.L.R.4th 1043 (1982).
The evidence of the complaint by an abused child should at least be subject to the equivalent of the federal guarantees of reliability contained in the hearsay expansion section, Fed. Evid.R. 803(24) and 804(b)(5), i.e., that the statement has "equivalent circumstantial guarantees of trustworthiness" to those contained in the other hearsay exceptions. Under these rules the court must also determine
that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of [the Rules of Evidence] and the interest of justice will best be served by admission of the statement into evidence.
The elements contained in the New Jersey statute, N.J.S.A. 9:6-8.46a(4) and the Washington statute quoted at fn. 5, appear to satisfy these criteria, and may be applied. Such an approach is preferable to straining the fabric of the hearsay rule and determining either that the statements were nonassertive, that they fall within Evid.R. 63(4)(a), or that Evid.R. 63(4)(b) be strained to accommodate this situation.
From these authorities, it appears that a court in deciding whether to admit the child's statement must determine (a) that the statement was by a child of tender years concerning *297 the abuse or neglect of the child or sexual conduct or practices involving the child and was made to a parent or other natural confidant or to a physician or other professional at a time and under circumstances which provide sufficient indicia of reliability to justify admission; (b) that if the child is unavailable as a witness, as provided in Evid.R. 62(6), there is corroborative evidence of the act or acts described in the statement; and (c) that there was notice of the proponent's intention to offer the statement given in sufficient time in advance of the hearing as to provide the adverse party a fair opportunity to prepare to meet it[11].
If there is an attack on the truthfulness of the witness, as opposed to the child-declarant, the matter can be fully explored before the jury. If, however, the attack is on the declarant's credibility, such as contesting the issue of the child's naivete by showing possible exposure to television, movies or even the viewing of sexual activity in the home, the court must be vigilant to see that "indicia of reliability" are present before the child's statement is related to the jury. Evid.R. 8(1). Other factors which may be considered are described in the Utah and Kansas statutes quoted earlier. These are the child's age and maturity, the nature and duration of the alleged abuse, the relationship between the child and the alleged offender, whether the statement was improperly induced by threats or promises, and the apparent reliability of both the statement and the child. These are non-exclusive factors, and each case must turn on its own considerations. See In Interest of K.L.M., 146 Ill. App.3d 489, 100 Ill.Dec. 197, 198-200, 496 N.E.2d 1262, 1263-1265 (App. 1986), interpreting a statute similar to N.J.S.A. 9:6-8.46a(4).
*298 In viewing the statements before us, various factors militate in favor of their substantive admission based upon their inherent reliability: the evident naivete of the victim; her relating of the event to the psychologist under clinical conditions accepted by the court in admitting his testimony for purposes of stating the diagnosis; the child's exhibiting knowledge of sexual practices beyond her reasonably anticipated imagination; the related distress exhibited by her after relating the events and detailing the participants; the inability to procure other corroborative evidence, since only the child and defendant would have been present; defendant's confession and the congruity between the confession and the child's story; and defendant's familiarity with the statements and his opportunity to refute them. Therefore, even though the statements are to be considered hearsay, they fall within what we now find to be an exception[12]. We thus perceive no error in the failure of the trial judge to give a limiting instruction pursuant to Evid.R. 6.

II
Defendant next urges that his convictions for aggravated sexual assault, sexual assault and impairing the morals of the child should have merged. We agree solely as to the latter charge. The test for merger is set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and has been adopted in our Code of Criminal Justice, N.J.S.A. 2C:1-8 to 12. See State v. Truglia, 97 N.J. 513, 520 (1984). Our test, however, may be somewhat less mechanistic than that in Blockburger. State v. Davis, 68 N.J. 69, 81 (1975). See also State v. Alevras, 213 N.J. Super. 331, 340-341 (App.Div. 1986). Separate sexual acts, although encompassed in a single episode, *299 may each be the basis for a separate conviction. State v. Fraction, 206 N.J. Super. 532, 538-39 (App.Div. 1985), certif. den. 206 N.J. Super. 532 (1986). By inserting his penis in the victim's mouth, defendant committed an aggravated sexual assault contrary to N.J.S.A. 2C:14-2a. This was a clear act of sexual penetration with a victim less than the age of 13 years. The additional acts of having N.R. touch or kiss his penis or having his penis touch her vagina were additional sexual assaults in violation of N.J.S.A. 2C:14-2b, and were not so integrally related to the aggravated assault to preclude separate convictions. Of course, as noted in State v. Yarbough, 100 N.J. 627, 641 (1985), cert. den. sub. nom. Yarbough v. New Jersey, ___ U.S. ___, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), and as recognized by the trial judge, consecutive sentences would have been improper.
These acts, however, would be necessary to prove the impairing or debauching of the morals of a child in violation of N.J.S.A. 2C:24-4a, the only added element being defendant's having assumed the responsibility for the care of the child. Since the sexual contacts are already the subject of convictions, the offense of impairing the morals of a child, the situation in which the particular prescribed conduct may be considered criminal, should not have been the subject of a separate conviction and must be vacated. See State v. Truglia, supra, 97 N.J. at 520.

III
Defendant lastly complains of the excessiveness of his sentence. The trial judge imposed the presumptive term of imprisonment, giving a detailed statement of his reasons. The mitigating factors advanced by defendant, although greater in number, were found to be outweighed by the severity of the crime, the single most important factor when formulating a sentence under the Code. State v. Roth, 95 N.J. 334, 367 (1984); State v. Hodge, 95 N.J. 369, 378-79 (1984). We find no *300 error or abuse of discretion on the part of the sentencing judge, except that the concurrent four-year term for impairing or debauching the morals of a child must be vacated, as must the associated $25 Violent Crimes Compensation Board penalty.
The conviction for impairing and debauching the morals of a child, N.J.S.A. 2C:24-4a is vacated together with the sentence and penalty imposed therefor; the remaining convictions and sentences are affirmed.
NOTES
[1] Although no order of confidentiality has heretofore been entered in these proceedings, we have determined to implement the suggestion contained in the administrative Monthly Bulletin Letter of March 1, 1978 and employ "nonidentifying initials" in this criminal matter to grant anonymity for the protection of the victim.
[2] Although the jury heard no more than the evidence described above concerning the reasons why defendant decided to confess, lengthy motions, both pretrial and during trial but out of the jury's presence, revealed that defendant refused to discuss the events until after he heard the results of a polygraph examination. It was only when defendant was told that the results indicated that his answers had been deceptive that he discussed the case further. The trial judge properly insulated the jury from any reference to the polygraph results.
[3] This determination was made before the court's ruling in State v. R.W., 104 N.J. 14 (1986), which reiterated that age by itself does not prima facie disqualify even very young children (there a child of 3 1/2) and negated the necessity of psychiatric or psychological evidence of competency concerning a very young child. We find no fault with the trial judge's ruling that N.R. would have been an incompetent witness, even measured against the R.W. standards.
[4] We agree with the court in State v. C.A. when it found Evid.R. 63(12), permitting statements to a "physician consulted for the purposes of treatment," inapplicable as a basis for admission of the statements, since the physician who testified was consulted for purposes of gathering evidence. Id. at 33. In the case before us Dr. Krupnick was also consulted for the purpose of gathering evidence, and therefore we do not have to reach the issue of whether a psychologist consulted for the purpose of treatment would satisfy R. 63(12). In addition, as in State v. C.A., the child here did not recount the events upon a belief that the statements would enable the doctor to treat her. Even if these impediments were overcome, this exception also would only have permitted the "general character of the cause or external source of symptoms," and thus no mention of the grandfather's name as the one who created the child's problems. No other enumerated hearsay exception could remotely sustain the admissibility of the child's statements.
[5] "A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness:
Provided, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement."
[6] See Ariz.Rev.Stat. § 13-1416; Colo. Rev. Stat. § 13-25-129, Kan. Stat. Ann. 60-460(dd); and Utah Code Ann. § 76-5-411, respectively.
[7] See, e.g., Colo. Rev. Stat. § 13-25-129(2):

"If a statement is admitted pursuant to this section, the court shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor."
[8] As reported in the Report of the New Jersey Supreme Court Committee on Evidence (1963), proposed R. 2(4) would have permitted the relaxation of the Rules of Evidence in civil proceedings. Even this limited relaxation rule was rejected.
[9] And see supplemental report of the New Jersey Supreme Court's Committee on Criminal Practice, 98 N.J.L.J. 435 (1975) and the subsequent amendment to Evid.R. 63(7) to incorporate Judge Botter's analysis.
[10] This exception must be distinguished from the admission of "fresh complaint" evidence as corroboration of a victim's testimony concerning a sexual attack. Such testimony negates an inference that, had no such complaint to a confidant been made, the credibility of the victim would be questioned. It is not substantive evidence of the crime. State v. Balles, 47 N.J. 331, 338 (1965), cert. den. and app. dism. 388 U.S. 461, 87 S.Ct. 2120, 18 L.Ed.2d 1321 (1967); State v. Hummel, 132 N.J. Super. 412, 421-22 (App.Div.), certif. den. 67 N.J. 102 (1975).
[11] Although Evid.R. 64 requires advance notice of intention to offer only certain written hearsay statements, the nature of the statements here described are such that similar notice should also be given of a statement described in this exception. This is a requirement also recognized in nearly all of the statutes. See, e.g., fn. 5, supra.
[12] There is no issue here of retroactive application of this exception. There could be no justifiable reliance by the grandfather upon the inadmissibility of a young child's statements. State v. Brooks, 201 N.J. Super. 10, 17-18 (App.Div. 1985); and see Rutherford Educ. Ass'n v. Board of Educ., 99 N.J. 8, 20-27 (1985), for a general discussion of retroactive effects of judicial decisions.