216 N.J. Super. 98 (1987)
523 A.2d 215
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANTHONY GROSS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1986.
Decided March 11, 1987.
*100 Before Judges PRESSLER, GAULKIN and BAIME.
Randall W. Westreich, Designated Counsel, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Randall W. Westreich and Herbert Levenson, Designated Counsel, on the briefs).
Brian W. Mason, Assistant Prosecutor, argued the cause for respondent (Herbert H. Tate, Jr., Essex County Prosecutor, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
Defendant was found guilty by a jury of murder (N.J.S.A. 2C:11-3a(3)), first-degree robbery (N.J.S.A. 2C:15-1) and second-degree possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4a). He was sentenced on the murder conviction to a 25 year custodial term with 12 1/2 years of parole ineligibility and on the weapon possession conviction to a consecutive 10 year term with 5 years of parole ineligibility; the armed robbery conviction was merged into the murder conviction. On this appeal from the judgment, defendant urges:
POINT I.
Pursuant to Rule 8(1) of the Rules of Evidence  preliminary inquiry by judge  court erred in not making a ruling as to whether a statement was admissible or not.
POINT II.
Court by admitting prior written statement of Clifford Plant violated Rule 63(1)  previous statements of witnesses.
POINT III.
The court, in its charge to the jury, failed to advise jury that guilty plea of co-defendant should not deny defendant on trial the right to have his guilt or innocence determined by evidence presented against him, not by what has happened with regard to criminal prosecution against someone else.

*101 POINT IV.
In the interest of justice, the Appellate Court should notice the plain error of permitting the sworn written statement of Clifford Plant to be admitted into evidence especially in the face of considerable conflicting testimony on the part of other State's witnesses.
POINT V.
The statement of Clifford Plant should not have been admitted because it was not made "in circumstances establishing its reliability."
POINT VI.
The court committed reversible error in failing to admit the statement of Reginald James, a co-defendant, as exceptions to the hearsay rule as being against the penal interest of the declarant at the time they were made.
We find the contentions made in Points III and VI to be clearly without merit. R. 2:11-3(e)(2). Our consideration of the remaining issues requires a full exposition of the facts.

I.
The convictions arise out of a January 7, 1981 incident in which two or more persons forcibly entered the Newark apartment of Thomas Pinkney, killed Pinkney and robbed Alfred Boatwright and Andre Loney.
Both Boatwright and Loney testified at trial. Boatwright said that he, Loney and Pinkney were in the apartment when a knock came at the door. Loney opened the door and two men came in with a .22 calibre rifle, saying "back up or freeze or something." Pinkney, who was sitting in a chair, "jumped up and came toward them" when "the shot went off." The intruders then told Boatwright and Loney to "get on the floor and empty out our pockets." After taking money from Boatwright, the men left. Boatwright testified that one of the men was masked and that the other, who shot Pinkney, was "[l]ight skinned and he had either green or brown eyes." Boatwright initially said that because he was "high"[1] he was unable to identify the masked man. On cross-examination, however, Boatwright acknowledged that he believed that person to be *102 Reginald James, a friend with whom he had spent time earlier that day.
Loney gave a somewhat different description of the occurrence. Loney, who also acknowledged being "high" although not "spaced out," said that he had opened the door to let Boatwright in the room. As he started to close the door, two men burst through, both wearing ski masks, one carrying a sawed-off shotgun and one with a .22 calibre rifle. Loney started "scuffling" with the two men. Suddenly "another third party kicked the door," the door "flew open" and Loney "got another rifle aimed at me." The third person, who was not masked, fired his rifle at Loney, but the "bullet and the shell just rejected out from the side...." At that point Pinkney got up, "comes around ... [a]nd, boom, he got shot in the stomach." Although Loney had apparently made no pretrial identification of defendant, at trial he said he was "positive" that defendant was "the guy that didn't have the mask on that shot my buddy."
The State also called Clifford Plant, who had earlier pleaded guilty to complicity in the murder of Pinkney. At a hearing outside the presence of the jury, he was confronted with his plea agreement that, in return for a recommendation that he would not serve more than 20 years in prison, he would testify truthfully and in accordance with his January 21, 1981 statement at any trial of the other participants. Plant said that "there is something wrong" with that recitation of the plea agreement because he "was only supposed to have been testifying against one person, that was another co-defendant of mine, not against Anthony Gross." Asked about his January 21 statement, Plant acknowledged that he had gone to the police station with his father, had been given his Miranda warnings and had signed and sworn to the truth of the statement. However, he testified that he had not implicated defendant in the murder or robbery and that defendant "wasn't even involved." Plant further testified that he had not told the police that Charlie Williams "had a shotgun and went in the place *103 with a shotgun" although he later so testified in the trial of Williams. Pressed as to what he had testified in the Williams trial, Plant said "I refuse to answer. I plead the Fifth Amendment."
Without any ruling by the trial judge or objection from defense counsel, the jury was returned to the courtroom and Plant was resworn in its presence. He again acknowledged having pleaded guilty to complicity in the murder and to having signed and sworn to the January 21 statement. However, he denied knowing defendant and said that the first time he saw defendant was "[w]hen I got locked up" after the killing. The prosecutor then sought to elicit the contradictory January 21 statement. Defense counsel objected at sidebar "to the foundation which has been laid.... The proper foundation would be to ask him what happened on that day and then if there is an inconsistency  ." The prosecutor agreed to "ask the question." He asked Plant a series of questions concerning defendant's involvement in the incident. After Plant testified that defendant was neither present nor otherwise involved[2] and without further objection from defense counsel, the prosecutor elicited the prior contradictory statement.
The substance of the prior statement was that Plant, Williams, defendant and one Eddie Maxwell went to the building where Pinkney lived. Plant knocked on Pinkney's door. When the door opened, defendant and Williams "pulled the rifle and shotgun out," went inside and closed the door. Plant and Maxwell remained in the hallway. Plant heard a shot, immediately after which defendant and Williams came out of the apartment. All four went to 84 Boyd Street in Newark, where defendant left the rifle and shotgun in apartment 1C. Plant then went to his apartment, 2E, in the same building. Plant acknowledged that Williams and Maxwell were with him at *104 Pinkney's, but insisted that defendant was not; he said that the police had inserted the references to defendant and he had signed the statement "because that's all he told me to do was sign it." On cross-examination, Plant said he had signed the statement because he wanted to minimize the time he would have to spend in prison and because he had been pressured, handcuffed to a chair for four hours and a plastic bag had been put over his head.
After Plant testified, the prosecutor called Police Sergeant Williams, who had taken the January 21 statement. He testified Plant had come to police headquarters with his father, that the father had provided food to his son and had been present during part of the interrogation, that all of the answers contained in the statement were Plant's, that Plant had read the statement after it was typed, that he was asked to make any corrections that he wished to make, that he had made corrections on the first page and "on the last question" and that he had placed his initials at each correction. Williams said that no plastic bag was put over Plant's head and that Plant had not been handcuffed or otherwise threatened. Williams also said that the first time he had ever heard defendant's name was when Plant mentioned the name in the course of the interview and the statement.
The prosecutor then asked Williams "[w]hat specifically did Mr. Plant tell you about Mr. Gross' participation in this crime?" Defense counsel objected that "[i]t's hearsay." The trial judge overruled the objection and the prosecutor thereupon elicited the essence of the January 21 statement. Williams further testified that a search warrant had been obtained based upon the information provided by Plant and a sawed-off shotgun had been recovered at 84 Boyd Street.[3] At the conclusion of his *105 testimony, the written statement itself was admitted in evidence without objection from defense counsel.
Defendant did not testify or present any witnesses in his behalf. In charging the jury, the trial judge instructed that the jury was "to determine whether or not [the January 21] statement was actually made by [Plant], and if made, whether that statement or any portion thereof is credible"; that "the circumstances and the facts surrounding the giving of the statement as well as other evidence" should be considered in determining its credibility; that if the jury should find that the statement "was not actually made or that [it was] not credible, then it had the right to disregard that statement completely"; that if the jury found the statement was given and that "part or all of it is credible," then the jury could give "such weight to that statement or any portion of it that [it finds] to be truthful and credible as [it] deems it should be accorded," and that in weighing Plant's testimony the jury may consider "whether he might have a special interest in the outcome of this case and whether his testimony might have been influenced by any feelings which he may have had." Defense counsel took no exception to that portion of the charge.

II.
The contentions made in Points I, II, IV and V of defendant's briefs all challenge the admission of Plant's out-of-court statement which contradicted his trial testimony. The admissibility of that statement as substantive evidence on the State's offer is governed by Evid.R. 63(1)(a)(i):
A statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him while testifying and the statement:
(a) Is inconsistent with his testimony at the hearing and is offered in compliance with the requirements of Rule 22(a) and (b); however, when the statement is offered by the party calling the witness it shall be admissible only if, in addition to the foregoing requirements, it (i) is contained in a sound recording or in a writing made or signed by the witness in circumstances establishing its reliability or (ii) was given under oath subject to the penalty of *106 perjury at a trial or other judicial, quasi-judicial, legislative, administrative or grand jury proceeding, or in a deposition.
Plant was a witness at trial and his prior statement was in a writing signed by him. The focus of inquiry is whether he signed the statement "in circumstances establishing its reliability."
The "circumstances establishing reliability" requirement was introduced into Evid.R. 63(1)(a) in 1980; it has not yet been the subject of any reported decisions. Prior to July 1, 1980, the Rule allowed the proponent of a witness to introduce a prior contradictory statement "only as permitted by Rule 20," which in turn permitted the prior statement to be used solely "to neutralize the witness' testimony, provided that the judge found the proponent had been surprised" by the trial testimony. See State v. Ross, 80 N.J. 239, 248 (1979).[4] That reflected the orthodox rule, long under attack by academic and other commentators and now rejected in a growing number of jurisdictions. See generally McCormick, Evidence, § 251 at 601-604 (2d Ed. 1972); 3A Wigmore, Evidence, (Chadbourn rev. 1970), § 1018 at 995-1007; Graham, "Employing inconsistent statements for impeachment and as substantive evidence," 75 Mich. L.Rev. 1565 (1977); Annotation, "Use or admissibility of prior inconsistent statements of witness as substantive evidence of facts to which they relate in criminal case," 30 A.L.R. 4th 414 (1984).
Effective July 1, 1980, both Evid.R. 63(1)(a) and Evid.R. 20 were amended to allow prior inconsistent statements to be admitted substantively on application of any party if the prior statement was "either in writing signed by the witness under circumstances establishing its reliability" or "given under oath subject to the penalty of perjury at a trial, judicial hearing, *107 proceeding before an agency empowered to issue subpoenas, or in a deposition." Evid.R. 63(1)(a) Comment (1985). See State v. Hacker, 177 N.J. Super. 533, 537 n. 2 (App.Div. 1981), certif. den. 87 N.J. 364 (1981).
As of July 1, 1982, Evid.R. 63(1)(a) was further amended to its present form. As summarized by the State Rules of Court Review Commission in its Comment,
The most important change in this amendment was to delete the requirement that the "special reliability" provisions of the 1980 amendment must be met even where the party offering the prior inconsistent statement as substantive evidence is not the proponent of the witness. Thus the rule reverted to the original rule of broad admissibility for inconsistent statements offered by an adverse party, even if the statement was not in writing or made under oath. It was decided that only where the proponent of the witness offered the prior inconsistent statement as substantive evidence was compliance with those reliability requirements necessary.
Evid.R. 63(1)(a) Comment (1985).
The successive formulations of Evid.R. 63(1)(a) thus represent various compromises between the "orthodox" rule against giving substantive evidential status to prior inconsistent statements (see State v. Reddick, 169 N.J. Super. 115, 121 (App.Div. 1979)) and the "academic" view that the hearsay dangers evaporate when the declarant is in court, under oath and subject to cross-examination before the factfinder concerning both the in-court and out-of-court statements. See, e.g., State v. Whelan, 200 Conn. 743, 513 A.2d 86 (1986), cert. den. ___ U.S. ___, 107 S.Ct. 597, 93 L.Ed.2d 598 (1986); Commonwealth v. Brady, 510 Pa. 123, 507 A.2d 66 (1986). Cf. State v. Stefanelli, 78 N.J. 418, 432 (1979). As the Supreme Court Special Committee on Evidence Rules described the accommodation, the present Rule is designed "to limit substantive admissibility of prior inconsistent statements [of the proponent's witness] to those statements given in a form and under circumstances importing special reliability."
Under the 1982 amendments, statements contained in sound recordings and in writings of, but not signed by, the witness were made admissible upon a proper showing of reliability. In *108 explaining that expansion of the Rule, the Committee emphasized "that it is not the making of the statement in circumstances establishing reliability to which this change in the rule is intended to refer but rather only the mechanics by which the statement is made." While this comment is cryptic, we are satisfied that the Committee did not intend that the "special reliability" requirement relate solely to mechanical authenticity of the statement; it simply pointed out that the 1982 amendments brought within the ambit of Evid.R. 63(1)(a) statements which had previously been excluded because of the mechanics by which they were made.
The Rule calls for all the relevant "circumstances" surrounding the prior inconsistent statement to be evaluated in determining whether its "reliability" has been sufficiently established.[5] To be reliable, a prior statement offered under the Rule need not have circumstantial probabilities of trustworthiness equivalent to those reflected in the various exceptions to the hearsay rule.[6]Cf. Ohio v. Roberts, 448 U.S. 56, 65-66, 100 S.Ct. 2531, 2538, 2539, 65 L.Ed.2d 597 (1980); State v. D.R., 214 N.J. Super. 278, 296 (App.Div. 1986). The hearsay exceptions are designed generally to admit certain out-of-court statements where the declarant is not a witness at the hearing. Where a *109 hearsay statement has "some degree of trustworthiness more than the ordinary," it is admitted "as not merely the best that can be got from that witness, but better than could ordinarily be expected without the test of cross-examination." 5 Wigmore, Evidence, (Chadbourn Rev. 1974) § 1420 at 251-252. Cf. Ohio v. Roberts, supra, 448 U.S. at 66, 100 S.Ct. at 2539. But Evid.R. 63(1)(a) requires the declarant to be a witness at the hearing. The out-of-court statement is thus subject to the scrutiny of cross-examination, which is recognized as the most effective means to test the truth of an out-of-court statement. See Lee v. Illinois, ___ U.S. ___, ___, ___, 106 S.Ct. 2056, 2061, 2062, 90 L.Ed.2d 514, 525-526 (1986); California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970); Douglas v. Alabama, 380 U.S. 415, 418-420, 85 S.Ct. 1074, 1076, 1077, 13 L.Ed.2d 934 (1965); Pointer v. Texas, 380 U.S. 400, 404-405, 85 S.Ct. 1065, 1068, 1069, 13 L.Ed.2d 923 (1965). Since the Rule thus contemplates cross-examination of the declarant,[7] the circumstantial showing of reliability need not be such as would permit the statement to be admitted in the absence of the declarant. Compare State v. D.R., supra, 214 N.J. Super. at 295-298.
We cannot catalog all of the "circumstances" which may bear upon the reliability of a statement offered under Evid.R. 63(1)(a). Certainly they include such considerations as (1) the declarant's connection to and interest in the matter reported in the out-of-court statement, (2) the person or persons to whom the statement was given, (3) the place and occasion for giving the statement, (4) whether the declarant was then in custody or otherwise the target of investigation, (5) the physical and mental condition of the declarant at the time, (6) the presence or absence of other persons, (7) whether the declarant incriminated *110 himself or sought to exculpate himself by his statement,[8] (8) the extent to which the writing is in the declarant's hand, (9) the presence or absence, and the nature of, any interrogation, (10) whether the offered sound recording or writing contains the entirety, or only a portion or a summary, of the communication, (11) the presence or absence of any motive to fabricate, (12) the presence or absence of any express or implicit pressures, inducements or coercion for the making of the statement, (13) whether the anticipated use of the statement was apparent or made known to the declarant, (14) the inherent believability or lack of believability of the statement and (15) the presence or absence of corroborating evidence.
All of the relevant circumstances should be explored at a hearing conducted pursuant to Evid.R. 8 out of the presence of the jury. The role of the trial judge at that preliminary inquiry is not to determine the credibility of the out-of-court statement. Rather it is for the judge to determine from the proofs whether the prior statement was made or signed under circumstances establishing sufficient reliability that the factfinder may fairly consider it as substantive evidence. Cf. State v. Farrow, 61 N.J. 434, 451 (1972), cert. den. 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973), State v. *111 Hampton, 61 N.J. 250, 271-272 (1972). See State v. Hurd, 86 N.J. 525, 543 (1981).[9]

III.
No Evid.R. 8 hearing was held at trial to determine the admissibility of Plant's statement under Evid.R. 63(1)(a). The substance of the statement was presented to the jury by direct examination of Plant without objection by defense counsel; it was only when the State later proffered the statement through Sergeant Williams that defense counsel objected that "[i]t's hearsay." Defendant's present challenge to the admission of Plant's statement is thus presented as plain error.
There can be no doubt that, if the statement was improperly admitted, the error was clearly capable of producing an unjust result. R. 2:10-2. See State v. LaPorte, 62 N.J. 312, 318-319 (1973). Plant's inculpation of defendant was the most powerful evidence presented by the State. Defendant was not identified by any other witness except Loney, who had made no pretrial identification and who gave the police a description of the gun-wielder which could be found not to fit defendant. Moreover, there was no physical evidence to place defendant at the scene. There is accordingly a fair degree of possibility that the admission of Plant's out-of-court statement, if error, led to an unjust verdict. See State v. Macon, 57 N.J. 325, 355 (1971).
The present record, however, does not permit us to make a fair judgment as to whether the statement was sufficiently reliable to be admitted in evidence. Because no Evid.R. 8 hearing was held, neither the State nor defendant was called upon to present proofs as to the circumstances or the reliability of the statement and the trial judge was not asked to make findings or conclusions concerning those matters. It would be *112 most inappropriate for us to attempt any assessment of the statement's admissibility in that setting.
We therefore must remand the matter to the Law Division to conduct an appropriate Evid.R. 8 hearing to determine the admissibility of Plant's statement under Evid.R. 63(1)(a)(i). At the conclusion of that hearing the trial judge shall set forth in full his findings and conclusions. If he determines that the statement was properly admitted at trial, then defendant's conviction shall stand. If the judge concludes that the prior statement was not properly admitted, he shall enter an order granting a new trial. Cf. State v. Kelly, 61 N.J. 283, 294-295 (1972).
Remanded for proceedings in accordance with this opinion. We do not retain jurisdiction.
PRESSLER, P.J.A.D., concurring in part and dissenting in part.
I concur in the majority's conclusion that this matter must be remanded to the trial court for the conduct of an Evid.R. 8 hearing. My single and narrow point of disagreement is engendered by my conviction that a statement given during police interrogation by a suspect in custody which inculpates another is the product of circumstances which are presumptively unreliable. Moreover, rather than submitting the Evid.R. 8 issue to a preponderance test, I would impose upon the State the burden of overcoming that presumption of unreliability by clear and convincing evidence.
As cogently explained by the majority opinion, the compromise between the so-called academic and orthodox views which is effected by the present version of Evid.R. 63(1)(a) was forged after intensive debate and several false starts and constitutes a unique attempt fairly to resolve the recanting witness problem. It is not my purpose therefore to readdress the relative merits of the orthodox view, represented by Fed.Evid.R. 801(d)(1)(A), which limits the substantive admissibility of a prior inconsistent *113 statement made by a witness-declarant who is subject to cross-examination to statements given under oath subject to the penalty of perjury "at a trial, hearing, or other proceeding, or in a deposition," and the academic view, as represented by Evid.R. 63(1) of 1953 Uniform Rules of Evidence, which would make any prior inconsistent statement of a declarant substantively admissible provided the declarant is present at trial and available for cross-examination.[1]
I believe, however, that the widespread rejection of the academic view, and particularly its rejection in the formulation of the federal rule, is instructive in applying the New Jersey compromise rule. See generally 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence §§ 5006-5007, 92-113 (1977); Graham, Employing Inconsistent Statements for Impeachment and as Substantive Evidence, 75 Mich.L.Rev. 1565, 1573-1582 (1977); 28 U.S.C.A., Federal Rules of Evidence, Historical Note to Fed.Evid.R. 801 at 133-139. See also Goings v. United States, 377 F.2d 753 (8th Cir.1967); State v. Saporen, 205 Minn. 358, 362, 285 N.W. 898, 901 (1939). In short, adherence to the orthodox rule is predicated on the general perception that the unrestricted evidential use of prior statements made even by testifying witnesses would increase the temptation and the opportunity for the distortion of evidence if not its actual fabrication. The New Jersey rule seeks to avoid these obvious dangers by requiring a threshhold judicial determination, by way of an Evid.R. 8 hearing, that the prior statement was "contained in a sound recording or in a writing made or signed by the witness in circumstances establishing its reliability...." I have no doubt that there must be a congeries of circumstantial patterns which could produce a contextually *114 reliable statement. I can, however, think of no circumstance more inherently unlikely to produce a reliable statement inculpating another than the custodial interrogation of a person suspected of committing a crime, whether or not the same crime as that of which he inculpates the other.
The unreliability of such statements is a phenomenon long since recognized by the United States Supreme Court and the New Jersey courts as well. See the cases collected in note 8 of the majority opinion. Thus, as Justice Brennan has recently observed in Lee v. Illinois, 476 U.S. ___, ___, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, 526 (1986), "[o]ver the years since Douglas [Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)], the Court has spoken with one voice in declaring presumptively unreliable accomplices' confessions that incriminate defendants." And in his concurring opinion in Dutton v. Evans, 400 U.S. 74, 98, 91 S.Ct. 210, 224, 27 L.Ed.2d 213 (1970), Justice Harlan expressed the view that "as a matter of due process * * * a confession of an accomplice resulting from formal police interrogation cannot be introduced as evidence of the guilt of an accused, absent some circumstance indicating authorization or adoption." And while I appreciate the majority's point that this condemnation of the custodial statement as "presumptively suspect" and as raising a "special suspicion" has generally been made in the context of the confrontation clause, nevertheless, I do not regard the force or substance of the condemnation, which is based solely on the circumstances in which the statement is made, as in any way diluted by variations in the subsequent trial circumstances in which it is offered as substantive evidence.
In short, while I agree that all of the factors enumerated by the majority are relevant to the judicial determination of circumstantial reliability, it is my view that the single factor of the formal custodial interrogation of a declarant himself suspected of crime militates so strongly against a reliability conclusion as to preclude the technique of simply considering that factor along with all the others. I would consequently accord that *115 factor presumptive effect in establishing non-reliability and would require that presumption to be overcome by clear and convincing evidence to the contrary.
NOTES
[1] Police Sergeant Williams confirmed that Boatwright was "very incoherent" at the scene and "very difficult to interview."
[2] Plant also said at this point that he did not remember whether Williams had entered the Pinkney apartment with a shotgun.
[3] At trial Loney identified the shotgun seized in the search as that used in the crimes.
[4] At all times since 1967, Evid.R. 63(1)(a) has provided that a prior inconsistent statement of a witness called by another party is admissible as substantive evidence as an exception to the hearsay rule "providing the statement would be admissible if made by the witness while testifying." See State v. Provet, 133 N.J. Super. 432, 437 (App.Div. 1975), certif. den. 68 N.J. 174 (1975).
[5] Evid.R. 20 continues to permit the party calling a witness to neutralize his testimony by a prior contradictory statement if the judge finds the party "was surprised." No "special reliability" need be shown in that setting.
[6] Wigmore finds that "three classes of reasons" underlie the hearsay exceptions:

a. Where the circumstances are such that a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed;
b. Where, even though a desire to falsify might present itself, other considerations such as the danger of easy detection or the fear of punishment would probably counteract its force;
c. Where the statement was made under such conditions of publicity that an error, if it had occurred, would probably have been detected and corrected.
5 Wigmore, Evidence, (Chadbourn Rev. 1974) § 1422 at 254.
[7] We are not concerned here with the admissibility of an out-of-court statement where the declarant is a witness at trial but not subject to cross-examination. See, e.g., Douglas v. Alabama, supra.
[8] Statements which exonerate the declarant and implicate another, or which are otherwise given under circumstances in which the declarant stands to gain by implicating another, have been held, in other settings, to be "presumptively suspect" and to raise "special suspicion." Lee v. Illinois, supra, ___ U.S. at ___, 106 S.Ct. at 2062, 90 L.Ed.2d at 526; Bruton v. United States, 391 U.S. 123, 141, 88 S.Ct. 1620, 1630, 20 L.Ed.2d 476 (1968) (White, J., dissenting). See State v. Spruill, 16 N.J. 73 (1954). Compare State v. Goldberg, 214 N.J. Super. 401, 407 (App.Div. 1986) (a search warrant can properly issue on the report of an informant who admits his own involvement while implicating another; the report can fairly be credited because "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." (quoting United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971))).
[9] If the prior statement is admitted, the jury should not be informed of the judge's reliability finding nor should it be asked to make its own finding as to admissibility. Cf. State v. Phelps, 96 N.J. 500, 513-516 (1984), State v. Hampton, supra, 61 N.J. at 271-272.
[1] The 1953 Uniform Rules were subsequently replaced by the 1974 Uniform Rules. Evid.R. 801(d)(1)(A) of the 1974 Uniform Rules is identical to the federal counterpart. See generally, 13 U.L.A. at 197-200, respecting the historical and analytical relationships among the Federal Rules of Evidence, the 1953 Uniform Rules and the 1974 Uniform Rules.