577 A.2d 806

·STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ANTHONY GROSS, DEFENDANT–APPELLANT.

Argued January 17, 1990—Decided July 30, 1990.

2 

*Randall W. Westreich,* Designated Counsel, argued the cause for appellant (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney).

*Virginia M. Lincoln,* Assistant Prosecutor, argued the cause for respondent (*Herbert H. Tate, Jr.,* Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

HANDLER, J.,

This appeal, as well as *State v. F. Gross,* 121 *N.J.* 18, 577 *A.*2d 814 (1990), also decided today, involves the standards that govern the admission and use at trial of a prior inconsistent statement inculpating a criminal defendant, given by a witness while held in police custody as a criminal suspect. In this case, defendant, Anthony Gross, was convicted of murder and of a weapons offense arising out of the killing of Thomas Pinkney during the robbery of two other persons. The evidence against defendant included a statement given by Clifford Plant prior to trial. The statement, taken from Plant while he was in police custody as a criminal suspect, was inconsistent with his trial testimony and was admitted without a hearing conducted specifically to determine its reliability.

Following an appeal from the conviction, the Appellate Division remanded the case, ruling that such a hearing should have been conducted to determine the reliability of the statement. 216 *N.J.Super.* 98, 523 *A.*2d 215 (1987). There was a partial dissent from the court's opinion, differing only with respect to

the proper burden of proof required to establish the reliability of the prior inconsistent statement. That difference presents the sole question on defendant's appeal as of right to this Court based on the dissent, *R.* 2:2–1(a)(2), his separate petition for certification having been denied. 108 *N.J.* 194, 528 *A.*2d 19 (1987).

## I.

On January 7, 1981, several persons, including defendant, forcibly entered the Newark apartment of Thomas Pinkney and killed him; in addition, they robbed two other persons who were in the apartment, Alfred Boatright and Andre Loney. Defendant was indicted in January 1983. At the trial, both Loney and Boatright were called as prosecution witnesses. Loney testified that he and Pinkney had heard a knock at the apartment door. Loney had opened it and admitted Boatright. Two men in ski masks, one with a .22 caliber rifle, the other with a sawed-off shotgun, had then entered and scuffled with Loney. Defendant, without a mask, had kicked the door open, entered, and shot at Loney. Protesting as he rose from his chair, Pinkney had been shot and killed. The intruders had then searched Loney and Boatright, looked around the apartment, and left after taking $4.00 from Loney. Boatright testified to a somewhat similar version of these events. Both indicated that defendant, who was described as light-skinned, had shot Pinkney.

Clifford Plant, who at the time of trial was incarcerated as the result of a plea to complicity in the Pinkney murder, also testified. Two weeks after the murder, Plant had given the police a sworn statement. In that statement Plant had said that he, defendant, Charlie Williams, and Eddie Maxwell had gone to Pinkney's apartment, and that after he had knocked on Pinkney's door, a "guy" had opened it, whereupon Gross and Williams had entered the apartment, armed with rifle and shotgun. Plant said that while he and Maxwell had waited in

the hall, they had heard a shot. The others had then come out of the apartment and all four left. He also said that defendant had put away "the rifle and the shotgun" and stated he had taken $4.00. Plant also described defendant as "light-skinned," said that it had been defendant's idea to rob Pinkney, and suggested it was "[m]ost likely Tony" who owned the guns. Plant further told the police that he did not know who had shot the decedent, but that defendant had entered and left Pinkney's apartment armed with a .22 caliber rifle. He also stated he had not been induced by threat or promise to give the statement. Later, as part of his plea bargain, Plant agreed to testify truthfully and in accordance with his prior statement.

Plant claimed at trial, out of the presence of the jury, that he had agreed to testify against only one defendant, Charles Williams, and not against Anthony Gross. Plant said that although he had gone to the police station with his father, had been given his *Miranda* rights, and had signed and sworn to the truth of his statement, he had not implicated Anthony Gross in the robbery and murder, and that defendant "wasn't even involved."

Plant was resworn before the jury. He testified that he did not know defendant and that he first saw Gross when he was imprisoned after the murder. He admitted to having pled guilty for his role in the murder and robbery, and that he had signed the sworn statement. Plant also acknowledged having entered a plea bargain, but denied that he had agreed to testify in accordance with his prior statement in exchange for a twenty-year-sentence recommendation by the State.

The prosecution sought to introduce Plant's prior inconsistent statement, but defense counsel objected because of the lack of a proper foundation. The prosecution then asked Plant about defendant's role in the murder-robbery, to which questions Plant responded that the defendant had not been present during or involved in the crime. Without further objection, the prior statement was introduced.

Plant then testified that defendant had not been at Pinkney's apartment, and any references to Gross in the prior statement had been inserted by the police, who had fabricated the statement and told him to sign it. On cross-examination, Plant claimed he had been pressured to sign by being handcuffed to a chair for four hours and having had a plastic bag placed over his head. He said he had reviewed only a small portion of the statement and had signed it because he had been afraid of further interrogation. He also testified that he had entered the plea agreement because he had four other charges pending against him at the time and he wanted to minimize his custodial term. On redirect examination, Plant said he had been unable to remember whether he had given the prior statement months before any plea agreement discussions, including his testifying in defendant's case.

The State called Police Sergeant Kenneth Williams, who had taken Plant's statement. Williams stated that Plant had come to the police station with his father, who had been present during part of the interrogation. He denied Plant had been handcuffed or had had a plastic bag placed over his head. He also testified that the answers in the statement were Plant's, who read the typed statement and corrected and initialled it. Williams said that the information in Plant's statement had furnished the basis for a search warrant, which had led to the discovery of a sawed-off shotgun identified at trial by Loney as the one used in the murder-robbery. At the conclusion of that testimony, Plant's statement was admitted in evidence without objection.

The jury returned a verdict finding defendant guilty of murder, *N.J.S.A.* 2C:11–3a(3), first-degree robbery, *N.J.S.A.* 2C:15–1, and second-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–4e. The trial court merged the robbery conviction into the murder conviction and sentenced defendant to a total of thirty-five years, with seventeen-and-one-half years parole ineligibility.

On appeal, the Appellate Division ruled that because the reliability of Plant's statement was disputed, the trial court was required to determine such reliability as a condition for its admission. 216 *N.J.Super.* at 112, 523 *A.*2d 215. It ruled further that the matter should be remanded for a hearing under *Evidence Rule* 8, and if on remand it was determined that the statement was reliable and had been properly admitted, the conviction would stand, but if not, a new trial would be required. *Ibid.*

## II.

*Evidence Rule* 63(1)(a) governs the admissibility of prior inconsistent statements. That rule provides:

> A statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him · while testifying *and* the statement:

> Is inconsistent with his testimony at the hearing and is offered in compliance with the requirements of Rule 22(a) and (b); however, when the statement is offered by the party calling the witness it shall be admissible only if, in addition to the foregoing requirements, it (i) is contained in a sound recording or *in a writing made or signed by the witness in circumstances establishing its reliability* or (ii) was given under oath subject to the penalty of perjury or other judicial, quasi-judicial, legislative, administrative or grand jury proceeding, or in a deposition. [Emphasis added.]

Prior to July 1, 1980, *Evidence Rule* 63, interacting with *Evidence Rule* 20, provided for the admission of prior inconsistent statements of a witness at the request of the party calling the witness only if that party was surprised, and then only to neutralize the witness's testimony. *E.g., State v. Ross*, 80 *N.J.* 239, 403 *A.*2d 457 (1979); *State v. Reddick*, 169 *N.J.Super.* 115, 121, 404 *A.*2d 340 (App.Div.1979); *see State v. Stefanelli*, 78 *N.J.* 418, 432, 396 *A.*2d 1105 (1979). That Rule comported with what is known as the "orthodox" approach, under which "prior inconsistent statements by a witness may be considered for impeachment purposes only, and not as substantive evidence of defendant's guilt," *State v. Denis*, 384 *So.*2d 419, 420 (La.1980). The orthodox approach denies substantive value to witness' prior inconsistent statements "based on a threefold rationale of

lack of trustworthiness: (1) the statement was not made under oath, (2) the trier of fact did not observe the declarant's demeanor at the time the statement was made, and (3) the declarant was not subject to contemporaneous cross-examination before the trier of fact by the party against whom the statement is being offered." Graham, "Employing Inconsistent Statements for Impeachment and as Substantive Evidence: A Critical Review and Proposed Amendments of Federal Rules of Evidence 801(d)(1)(A), 613, and 607," 75 *Mich.L.Rev.* 1565, 1568 (1977) (hereinafter Graham). That rationale has been criticized, and, as a result, support for the orthodox rule has weakened. *Ibid.;* see *McCormick, Evidence,* § 251 at 601–604 (E. Cleary 2d Ed.1972); 3A *Wigmore, Evidence* (Chadbourn rev. 1970), § 1018 at 995–1007; Annotation, "Use or Admissibility of Prior Inconsistent Statements of Witness as Substantive Evidence of Facts to Which They Relate in Criminal Case—Modern State Cases," 30 *A.L.R.* 4th 414 (1984 & Supp.1989) (hereinafter Annotation).

Several jurisdictions, including New Jersey, have moved away from the traditional rule and allow the admission of prior inconsistent statements not only for impeachment purposes but also for substantive value, provided that the witness is available for cross-examination. *E.g., State v. Hacker,* 177 *N.J.Super.* 533, 537 n. 2, 427 *A.*2d 109 (App.Div.1981), *certif. denied,* 87 *N.J.* 364, 434 *A.*2d 1054 (1981); *State v. Allred,* 134 *Ariz.* 274, 655 *P.*2d 1326 (1982); *State v. Whelan,* 200 *Conn.* 743, 513 *A.*2d 86, *cert. denied,* 479 *U.S.* 994, 107 S.Ct. 597, 93 *L.Ed.*2d 598 (1986); *Gibbons v. State,* 248 *Ga.* 858, 286 *S.E.*2d 717 (1982); *Watkins v. State,* 446 *N.E.*2d 949 (Ind.1983); *Commonwealth v. Brady,* 510 *Pa.* 123, 507 *A.*2d 66 (1986); *State v. Vogel,* 96 *Wis.*2d 372, 291 *N.W.*2d 838 (1980). The Federal Rules of Evidence employ a variant standard, defining prior inconsistent statements *made under oath* as non-hearsay. *Fed.R.Evid.* 801(d)(1)(A); *see, e.g., United States v. Ragghianti,* 560 *F.*2d 1376 (9th Cir.1977). A number of states have adopted the federal approach. *E.g., State v. Delgado–Santos,* 497 *So.*2d 1199, 1199 (Fla.1986); *State v. Demery,* 331 *N.W.*2d

7, 11–12 (N.D.1983); *State v. Spadafore*, 220 *S.E.*2d 655, 664 (W.Va.1975).

When New Jersey abandoned the orthodox rule, both *Evidence Rule* 63(1)(a) and *Evidence Rule* 20 were amended to allow prior inconsistent statements to be admitted substantively on application of any party if the prior statement was "either in writing signed by the witness under circumstances establishing its reliability" or "given under oath subject to the penalty of perjury at a trial, judicial hearing, proceeding before an agency empowered to issue subpoenas, or in a deposition." *Evid.R.* 63(1)(a) comment (1985); *see State v. Hacker, supra,* 177 *N.J. Super.* at 537 n. 2, 427 *A.*2d 109.

■ Jurisdictions that admit prior inconsistent statements for substantive purposes acknowledge particular concern about the reliability of such statements. The current Rule is designed "to limit substantive admissibility of prior inconsistent statements [of the proponent's witness] to those statements given in a form and under circumstances importing special reliability." 216 *N.J.Super.* at 107, 523 *A.*2d 215 (quoting New Jersey Supreme Court Special Committee on Evidence Rules). Some courts have required not only that the declarant be present at trial and available for cross-examination, but also that the declarant recall having made the statement. *E.g., Watkins v. State, supra,* 446 *N.E.*2d at 960; *State v. Allred, supra,* 134 *Ariz.* at 279, 655 *P.*2d at 1330. Connecticut has added the restrictions that the prior statement must have been signed by the declarant and that the declarant must have personal knowledge of the facts stated therein. *State v. Whelan, supra,* 200 *Conn.* at 751, 513 *A.*2d at 92–93.

In this case, the Appellate Division determined that reliability may be established under a general standard:

> To be reliable, a prior statement offered under the Rule need not have circumstantial probabilities of trustworthiness equivalent to those reflected in the various exceptions to the hearsay rule.... [T]he circumstantial showing of reliability need not be such as would permit the statement to be admitted in the absence of the declarant. [216 *N.J.Super.* at 108–09, 523 *A.*2d 215.]

The Appellate Division then enumerated the factors that would be relevant to a determination of reliability:

(1) the declarant's connection to and interest in the matter reported in the out-of-court statement, (2) the person or persons to whom the statement was given, (3) the place and occasion for giving the statement, (4) whether the declarant was then in custody or otherwise the target of investigation, (5) the physical and mental condition of the declarant at the time, (6) the presence or absence of other persons, (7) whether the declarant incriminated himself or sought to exculpate himself by his statement, (8) the extent to which the writing is in the declarant's hand, (9) the presence or absence, and the nature of, any interrogation, (10) whether the offered sound recording or writing contains the entirety, or only a portion of the summary, of the communication, (11) the presence or absence of any motive to fabricate, (12) the presence or absence of any express or implicit pressures, inducement or coercion for making the statement, (13) whether the anticipated use of the statement was apparent or made known to the declarant, (14) the inherent believability or lack of believability of the statement, and (15) the presence or absence of corroborating evidence. [*Id.* at 109–10, 523 *A.*2d 215.]

Such antecedent reliability poses heightened concerns in this case because the prior inconsistent statement was made by a witness who was in police custody and was himself a suspect in the crimes for which defendant was charged. The statement inculpated defendant; in some measure, it also served to lessen the declarant's own culpability. The Appellate Division acknowledged that "[s]tatements which exonerate the declarant and implicate another, or which are otherwise given under circumstances in which the declarant stands to gain by implicating another, have been held, in other settings, to be 'presumptively suspect' and to raise 'special suspicion.'" 216 *N.J.Super.* at 110 n. 8, 523 *A.*2d 215. The court declined, however, to invest Plant's statement with a presumption of unreliability. It determined that the State could establish its reliability by a preponderance of the evidence.

The Appellate Division aligns itself generally with the majority of jurisdictions that admit prior inconsistent statements for substantive purposes by allowing antecedent reliability to be established by a preponderance of the evidence without special treatment attributable to the status of the declarant-witness. The dissent, however, disagreed with the majority concerning

the appropriate standard for the burden of proof to establish reliability of the prior inconsistent statement:

> My single and narrow point of disagreement is engendered by my conviction that a statement given during police interrogation by a suspect in custody which inculpates another is the product of circumstances which are presumptively unreliable. Moreover, rather than submitting the *Evid.R.* 8 issue to a preponderance test, I would impose upon the State the burden of overcoming that presumption of unreliability by clear and convincing evidence.... I can ... think of no circumstance more inherently unlikely to produce a reliable statement inculpating another than the custodial interrogation of a person suspected of committing a crime, whether or not the same crime as that of which he inculpates the other.... In short, while I agree that all the factors enumerated by the majority are relevant to the judicial determination of circumstantial reliability, it is my view that the single factor for the formal custodial interrogation of a declarant himself suspected of crime militates so strongly against a reliability conclusion as to preclude the technique of simply considering that factor along with all the others. I would consequently accord that factor presumptive effect in establishing non-reliability and would require that presumption to be overcome by clear and convincing evidence. [*Id.* at 112–14, 523 *A.*2d 215.]

Both the majority and the dissent were mindful of sixth amendment Confrontation Clause cases that characterize as inherently unreliable codefendant declarations that inculpate defendants. 216 *N.J.Super.* at 110 n. 8, 114, 523 *A.*2d 215 (citing *Lee v. Illinois,* 476 *U.S.* 530, 541, 106 *S.Ct.* 2056, 2062, 90 *L.Ed.*2d 514, 526 (1986); *Bruton v. United States,* 391 *U.S.* 123, 141, 88 *S.Ct.* 1620, 1630, 20 *L.Ed.*2d 476, 488 (1968) (White, J., dissenting); *State v. Spruill,* 16 *N.J.* 73, 78, 106 *A.*2d 278 (1954)); *see State v. Gray,* 67 *N.J.* 144, 147, 336 *A.*2d 486 (1975). The dissenter maintained that although the presumption against the reliability of accomplice statements has arisen in Confrontation Clause cases, she did "not regard the force or substance of the condemnation, which is based solely on the circumstances in which the statement is made, as in any way diluted by variations in subsequent trial circumstances in which it is offered as substantive evidence." 216 *N.J.Super.* at 114, 523 *A.*2d 215. The State also recognizes that accomplice statements in Confrontation Clause cases are considered to be presumptively unreliable. The State, however, stresses that this

problem is cured in cases such as this one by the defendant's ability to cross-examine the declarant.

█ We are satisfied that although the status of a witness is a highly relevant circumstance, the standard for determining the reliability of a prior inconsistent statement for substantive value should not vary according to whether the witness is an accomplice or is otherwise a suspect in the underlying crime. Jurisdictions that admit prior inconsistent statements into evidence for substantive purposes do so whether the witness is a codefendant, *e.g., Fletcher v. State,* 442 *N.E.*2d 990 (Ind.1982); *State v. Bowman,* 741 *S.W.*2d 10 (Mo.1987) (*en banc*), or a non-party witness, *e.g., State v. Whelan, supra,* 200 *Conn.* 743, 513 *A.*2d 86; *Burney v. State,* 252 *Ga.* 25, 310 *S.E.*2d 899 (1984). Missouri allows, by statute, such statements to be admitted for substantive use without regard to the status of the declarant-witness:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of *any* witness testifying in the trial of an offense ... shall be received as substantive evidence, and the party offering the prior inconsistent statements may argue the truth of the statement.
>
> [Mo.Rev.Stat. § 491.074 (1986), *quoted in State v. Bowman, supra,* 741 *S.W.*2d at 12 (emphasis added).]

Similarly, those jurisdictions that have admitted such statements only for impeachment purposes have done so regardless of the status of the witness. *E.g., People v. Handley,* 422 *Mich.* 859, 365 *N.W.*2d 752 (1985) (prior inconsistent statements of codefendant inadmissible for substantive purposes); *State v. Marco,* 220 *Neb.* 96, 368 *N.W.*2d 470 (1985) (prior inconsistent statements of non-party witness inadmissible for substantive purposes).

The majority below explained that the declarant's presence in court and the opportunity for cross-examination obviate any special requirement to demonstrate the reliability of the prior statement.

> The hearsay exceptions are designed generally to admit certain out-of-court statements where the declarant is not a witness at the hearing.... But *Evidence Rule* 63(1)(a) requires the declarant to be a witness at the hearing.

> The out-of-court statement is thus subject to the scrutiny of cross-examination, which is recognized as the most effective means to test the truth of an out-of-court statement.... Since the Rule thus contemplates cross-examination of the declarant, the circumstantial showing of reliability need not be such as would permit the statement to be admitted in the absence of the declarant. [216 *N.J.Super.* at 108–09, 523 *A.*2d 215.]

That position is consistent with the contemporary rule, which stresses the efficacy of in-court examination to test the veracity of a witness's out-of-court statement. *See* Annotation, *supra.* Thus, in *State v. Vogel, supra,* 96 *Wis.*2d 372, 291 *N.W.*2d 838, with respect to the admission of the prior statement of an accomplice, which inculpated the defendant but was repudiated in his trial testimony, the Supreme Court of Wisconsin said:

> The effect of this testimony, along with the admission of [the] earlier statement, was to place before the jury two conflicting accounts regarding the defendant's involvement in the robbery. Although neither the defendant, nor the jury, was present when [the witness] related the earlier account to the police, its truthfulness, as well as that of the account given at trial, could be challenged and evaluated at trial through cross-examination under oath in the presence of the jury. [*Id.* at 393, 291 *N.W.*2d at 849.]

■ Criticism of the modern rule and its reliance on in-court cross-examination stresses the "lack of contemporaneous cross-examination" with respect to the prior inconsistent statements, that is, the absence of any opportunity to cross-examine the declarant when the prior statement itself was given. *E.g., Ruhala v. Roby,* 379 *Mich.* 102, 150 *N.W.*2d 146, 156 (1967). We are persuaded in this case that the absence of a prior opportunity to assure reliability, particularly in the form of contemporaneous cross-examination, should neither be a barrier to the use of such prior inconsistent statements nor justify more stringent rules of admissibility, even with respect to the custodial statement of a declarant who is a criminal suspect.

■ Generally speaking, in-court cross-examination of a witness can be relied on to explore and to expose most, if not all, relevant circumstances surrounding the prior inconsistent statement. *See California v. Green,* 399 *U.S.* 149, 160, 90 *S.Ct.* 1930, 1936, 26 *L.Ed.*2d 489, 498 (1970); 4 J. Weinstein & M. Berger, *Weinstein's Evidence,* 801 (1976); Graham, *supra,* 75

*Mich.L.Rev.* at 1569–71. It is not critical that the fact-finder have observed first-hand a witness's statement in order to evaluate its credibility and probative worth. Judge Learned Hand observed in *DiCarlo v. United States*, 6 *F*.2d 364, 368 (2d Cir.1925):

> If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered in court.

Moreover, cross-examination plays the same role in the adversarial process whether the witness is a defendant, codefendant, accomplice, suspect, or a relative stranger to the criminal events. As the Appellate Division stated: "The out-of-court statement is ... subject to the scrutiny of cross-examination, which is recognized as the most effective means to test the truth of an out-of-court statement." 216 *N.J.Super.* at 109, 523 *A*.2d 215 (citing *Lee v. Illinois, supra,* 476 *U.S.* at 540, 106 *S.Ct.* at 2062, 90 *L.Ed.*2d at 525–26; *California v. Green, supra,* 399 *U.S.* at 158, 90 *S.Ct.* at 1935, 26 *L.Ed.*2d at 497; *Douglas v. Alabama,* 380 *U.S.* 415, 418–420, 85 *S.Ct.* 1074, 1076–77, 13 *L.Ed.*2d 934, 937–38 (1965); *Pointer v. Texas,* 380 *U.S.* 400, 404–405, 85 *S.Ct.* 1065, 1068, 13 *L.Ed.*2d 923, 926–27 (1965)).

We acknowledge, as did the majority below, that statements of a suspected accomplice or a codefendant, who might have been motivated to inculpate the defendant in order to exonerate him or herself, to gain revenge, or to curry favor with the authorities, engender skepticism. 216 *N.J.Super.* at 110, 523 *A*.2d 215. That skepticism, however, is strongest in cases in which such statements are sought to be used in the absence of the declarant from court with no realistic opportunity for the defendant to confront the declarant and to attack the prior statement. *See Lee v. Illinois, supra,* 476 *U.S.* at 540–41, 106 *S.Ct.* at 2061–62, 90 *L.Ed.*2d at 525–26. The ability to confront and cross-examine the declarant in court redresses the absence

of an antecedent, contemporaneous opportunity to test or assure the reliability of the prior statement.

We do not, however, regard cross-examination and antecedent reliability as interchangeable conditions for the admission of a prior inconsistent statement under *Evidence Rule* 63(1)(a). The Rule requires, when the statement is offered by the party calling the witness, both the opportunity to cross-examine *and* sufficient indicia of antecedent reliability. Although cross-examination does not obviate the need to demonstrate reliability, we are satisfied that the opportunity to cross-examine eliminates the necessity to impose a stricter or different test for admissibility relating to the antecedent reliability of a suspect-declarant's prior custodial statement than for that of any other witness to a crime. We determine, as a matter of law, that no presumption of unreliability attaches to such prior inconsistent statements that requires a special or heightened burden of proof.

As earlier noted, the majority below ruled that a fair preponderance of the evidence is the appropriate burden of proof to demonstrate, in an *Evidence Rule* 8 hearing, reliability of a prior inconsistent statement. The dissent differed from the majority with respect to the applicable burden of proof, concluding that the burden of proof required clear and convincing evidence. In *State v. Phelps*, 96 *N.J.* 500, 518, 476 *A.*2d 1199 (1984), the Court considered the admissibility of a prior statement of an alleged co-conspirator pursuant to *Evidence Rule* 63(1)(a). The condition for the admissibility of such a statement was the existence of a conspiracy in which the defendant had participated. The Court held that the appropriate burden of proof to establish that condition should be a fair preponderance of the evidence, observing that to require

proof "beyond a reasonable doubt" would place too heavy a burden on the prosecution and would exclude trustworthy information. The ruling involves admissibility of evidence, not determination of guilt or innocence. On the other hand, the "prima facie" standard has the tendency to permit into evidence statements that may be only marginally reliable. It has also been said that this

> test would encourage courts to deemphasize competency of evidence and improperly shift to the jurors the burden of determining competency ... On balance, the "fair preponderance" is the most appropriate guideline. It will adequately safeguard defendants and yet permit the jury to hear reliable and trustworthy information. [*Id.* at 519, 476 *A*.2d 1199.]

*See also Bourjaily v. United States,* 483 *U.S.* 171, 176, 107 *S.Ct.* 2775, 2779, 97 *L.Ed.*2d 144, 153 (1987) (preponderance standard applies in establishing preliminary facts relevant to admissibility of coconspirator's statements pursuant to *Federal Rules of Evidence* 801(d)(2)(E), joined by dissenters); *United States v. Marbury,* 732 *F*.2d 390, 401 (5th Cir.1984) (same); C. Wright and K. Graham, *Federal Practice and Procedure* § 5053 n. 31 (Supp.1989).

The premise underlying the *Phelps* ruling is that the evidence to be admitted would be "reliable and trustworthy." Reliability is similarly required by *Evidence Rule* 63 as the condition for the admission of the prior inconsistent statement of a suspect-declarant. The ordinary burden of proof, which we now adopt, does not lessen the importance of the status of the declarant-witness as a circumstance relevant to the reliability of the prior inconsistent statement. We have consistently recognized that the status of a witness as an accomplice or codefendant invites special consideration. *See, e.g., State v. Begyn,* 34 *N.J.* 35, 54, 167 *A*.2d 161 (1961) (so-called "accomplice rule" calls for specific cautionary jury instruction "that the evidence of an accomplice is to be carefully scrutinized and assessed in the context of his specific interest in the proceeding ... which might lead to influencing [his or her] testimony, because of some involvement in the criminal situation out of which the indictment and trial of the defendant arise"); *see also* New Jersey Model Criminal Jury Charges § 4.100 (special instruction in accordance with *Begyn* ). Thus, the status of the declarant-witness is but one of many relevant circumstances, *supra* at 10–11, 577 *A*.2d at 810–811, that the trial court should consider as a threshold issue in determining the admissibility of such a statement under *Evidence Rule* 8. Further, if the statement is admitted, the jury should be instructed to consider the same kinds of factors,

including the status of the witness, in assessing its credibility and probative worth, *see, e.g., State v. Bowman, supra,* 741 *S.W.*2d at 12–14, although the jury must not be informed of the court's finding that the statement was reliable. *See State v. Phelps, supra,* 96 *N.J.* 500, 476 *A.*2d 1199.

We do not on this appeal express any view of the reliability of Plant's prior statement. We are satisfied, however, as was the Appellate Division, that the trial court's instruction to the jury was generally sufficient to focus its attention on the need to be especially careful in assessing the believability and worth of Plant's prior statement. In the future, however, jury instructions relating to this form of evidence should be more strictly tailored to the concerns expressed herein. Thus, the jury could be instructed that the witness' prior inconsistent statement under police interrogation must be carefully scrutinized and assessed in light of all the surrounding circumstances, including his or her interest in giving the statement at that time.

### III.

Because the trial court had not conducted a hearing under *Evidence Rule* 8 to determine the reliability of Plant's prior inconsistent statement as a basis for its admission, we agree with the disposition ordered by the Appellate Division, which calls for such a hearing, with the convictions to abide that event. Accordingly, the judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*For reversal* —None.