**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0462-18

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MACAULAY WILLIAMS,

      Defendant-Appellant.

_____

Submitted June 3, 2021 – Decided July 22, 2021

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-02-0168.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (David M. Liston, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Macaulay Williams of third-degree insurance fraud, N.J.S.A. 2C:21-4.6(a) and (b), and third-degree attempted theft, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:20-4. On August 13, 2018, the trial judge sentenced defendant to concurrent one-year terms of probation. He appeals his convictions. We affirm.

The following facts are gleaned from the record. Defendant submitted a claim to his homeowner's insurance carrier for water damage, which was paid. The adjuster informed him that the policy would also reimburse him for additional living expenses (ALE), incurred as a result of displacement while repairs were being made. After the discussion, defendant emailed the adjuster, requesting compensation for twenty-one days at $1500 per day, for a total of $31,500, in ALE.

The adjuster sent defendant the relevant questionnaire. Once completed, it did not support the claim. The only documentation defendant attached were photocopies of two checks payable to his former girlfriend, one for $5600, dated May 6, 2013, and the other for $10,850, dated June 3, 2013.

The State presented a witness from defendant's credit union who testified that when the checks were written, defendant did not have sufficient funds in his

A-0462-18

account for them to clear. The checks were never cashed. The matter was referred to the insurer's special investigation unit (SIU).

An SIU investigator testified at trial that she met with defendant's former girlfriend at her home in Fords. It was raining that day, and since she was not invited in, she conducted the interview while she stood outside on the porch, holding an umbrella, while the former girlfriend stood in a doorway. The interview was not completely recorded, as partway through the device fell to the ground. The investigator restarted the machine later when she realized it was not recording. During that interview, the former girlfriend said defendant had been her fiancé for approximately a year, and that he stayed with her while his home was being worked on. She alleged that during that time defendant contributed towards expenses, such as utility bills.

Defense counsel requested the court take judicial notice that it was not raining on that day in New Brunswick, a town near Fords. The judge refused, and because of the age of the case, refused to adjourn the trial to allow counsel the opportunity to obtain weather information for the town of Fords. Counsel considered the information crucial to impeach the investigator, whom she characterized as a "liar."

A-0462-18

Because the interview of the former girlfriend did not substantiate defendant's claim, he was asked by the insurer to submit to an examination under oath. He refused.

Defendant's former girlfriend was also called as the State's witness. On the stand, she denied she had ever been engaged to defendant, denied any recall whatsoever of the interview taking place, and denied recalling the amounts that defendant may have paid her while he stayed at her home. Despite listening to the recording, during which she said, among other things, that defendant had been her fiancé for a year, she insisted she did not recall making the statement and that it was not true.

At the State's request, the judge conducted a Gross[1] hearing outside the presence of the jury since the witness claimed she could not remember anything. Having heard from counsel after some of the former girlfriend's testimony, and the playing of the two portions of the insurance investigator's recorded interview, the court found the former girlfriend was a "recanting witness." As he said, every response out of the witness's mouth was "I don't recall." It was either "a serious loss of memory or she[ was] feigning the loss of memory . . . ." The judge included a recanting witness charge with the closing instructions.

---

[1] State v. Gross, 121 N.J. 1 (1990).

A-0462-18

Model Jury Charges (Criminal), "Recanting Witnesses (Substantive)" (approved Oct. 24, 1994).

During the former girlfriend's examination, the prosecutor asked why she had not responded to the county prosecutor's requests that she meet with staff to discuss the investigation, and commented on the fact she retained counsel. She denied having been contacted by the prosecutor's office, insisting instead that her law school administrators told her that the county prosecutor was attempting to reach her. The court sustained defense counsel's objection to questioning regarding the witness's employment of an attorney.

The judge inadvertently charged the jury incompletely on the offense of attempted theft by deception. He charged attempt, but not the theft by deception. He promptly reinstructed the jury, tracking the model jury charge. Model Jury Charges (Criminal), "Theft by Deception (N.J.S.A. 2C:20-4)" (rev. Apr. 15, 2013). No objection was made.

Defendant moved for a new trial on the basis that the State did not offer adequate proof to support the charges. Without much explanation, the judge denied the application.

5

By way of pretrial motion, defendant was barred from introducing evidence regarding the claim for water damage. That claim was not rejected by the insurer.

Now on appeal, defendant raises the following points:

POINT I

THE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO A FAIR TRIAL AND HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS BY THE TRIAL COURT'S PRECLUDING THE ADMISSION OF CERTAIN EVIDENCE.

POINT II

THE ADMISSION OF IRRELEVANT, IMMATERIAL AND PREJUDICIAL EVIDENCE DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

POINT III

ADMISSION OF THE ENTIRE RECORDING OF [DEFENDANT'S FORMER GIRLFRIEND'S] OUT[-]OF[-]COURT STATEMENT TO THE INSURANCE COMPANY AND GIVING A JURY INSTRUCTION SHE WAS A RECANTING WITNESS OVER THE DEFENDANT'S OBJECTION WAS ERROR WHICH DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT IV

CERTAIN QUESTIONING BY THE PROSECUTOR WAS GROSSLY IMPROPER AND CONSTITUTED MISCONDUCT.

A-0462-18

POINT V

THE DENIAL OF DEFENDANT'S NOTICE OF
MOTION FOR NEW TRIAL WAS ERROR.

POINT VI

THE COURT'S JURY CHARGES ON ATTEMPTED
THEFT BY DECEPTION WERE CONFUSING,
CONTRARY AND ERRONEOUS AND DEPRIVED
THE DEFENDANT OF A FAIR TRIAL.

POINT VII

THE AGGREGATE ERRORS DENIED
DEFENDANT A FAIR TRIAL.

I.

Defendant contends he was denied a fair trial and due process by certain evidentiary rulings. First, he contends the pretrial ruling that only evidence regarding his ALE claim was admissible was error. Second, he challenges the court's refusal to take judicial notice of the weather conditions in the adjoining town, and refusal to grant an adjournment so more precise information could be obtained.

The judge who denied admission of the property damage claim did so because it was different in nature from the ALE claim. As he said, this was not a contract case, but a criminal case, and the jury could be confused by admission of that evidence because it was irrelevant to the alleged fraud. We review a

7

judge's evidentiary rulings for abuse of discretion.  State v. Prall, 231 N.J. 567, 580 (2018).

The two claims defendant made to his insurer were quite different in nature.  They required different approval processes.  One was readily verified by the adjuster by a visit to defendant's home.  The other required defendant to complete a questionnaire and document the ALE claim.  The information regarding the water damage claim was neither probative nor material.  See State v. Desir, 245 N.J. 179, 193 (2021) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 3.2 on R. 3:13-3 (2020)).  That defendant submitted a legitimate property claim did not undercut the charge that he attempted to submit a fraudulent ALE claim.  See State v. Williams, 240 N.J. 225, 235 (2019).  It was not an abuse of discretion to deny admission of the evidence.

Defendant also complains that the trial court should have taken judicial notice of rain conditions the day the investigator claimed she interviewed defendant's former girlfriend.  The interview took place several years before the case was brought to trial.  It is not surprising the judge would not take judicial notice of the weather conditions in an adjoining town, as the possibility existed they were simply different.  Judicial notice is not taken where the information is unreliable.  Accuracy is a prerequisite for admission.  See N.J.R.E. 201.  And,

there was ample time in which to obtain the weather conditions in the town where the interview took place, as opposed to a nearby community, given the years the matter was pending.

The failure to adjourn is also subject to abuse of discretion review. State v. Miller, 216 N.J. 40, 47 (2013). In light of the age of the case, we cannot say that the judge's refusal to adjourn was an abuse of discretion here. This was proposed impeachment material. Even if the investigator was wrong, to suggest the weather conditions alone would make her testimony incredible is not logical. The interview occurred July 11, 2013, and the trial began May 29, 2018. The weather conditions, even if the investigator was mistaken, do not impeach the investigator's credibility, or raise questions about the admissibility of the recording.

The testimony establishing the checks defendant wrote would not have been honored because he lacked the funds in his account was not unfairly prejudicial. The information was highly probative, clearly tending to prove knowledge and intent. That it was also prejudicial is the unsurprising, incidental byproduct of highly probative evidence. See State v. Rose, 206 N.J. 141, 164 (2011).

A-0462-18

When defense counsel objected to the line of questioning regarding whether defendant's former girlfriend hired an attorney, the court sustained the objection and directed the prosecutor to rephrase the question and refocus on her refusal to submit to an interview by the prosecutor's office. The questions regarding her cooperation with the investigation were not unfairly prejudicial.

II.

Defendant also challenges the admission of the investigator's taped interview. The court relied on the N.J.R.E. 803(a)(1) exception to hearsay, reasoning that the former girlfriend was a recanting witness and that, therefore, it was inadmissible. The rule allows admission of hearsay where the statements are contained in a sound recording, and the declarant's testimony contradicts such a recording. The declarant must testify and be subject to cross-examination.

The rule was properly applied in this case, where the former girlfriend denied any recall in response to virtually every question. A witness's failure to remember, when the memory failure relates to a recorded statement, allows for the introduction of the tape. See State v. R.Y., 242 N.J. 48, 70 (2020). Although the trial judge did not specifically enumerate the Gross factors, he sufficiently referenced the case and his conclusions regarding the witness. If his failure to

10

enumerate each element can even be characterized as error, it was certainly harmless error, as ultimately his decision is correct. It did not have the clear capacity to produce an unjust result. See State v. Daniels, 182 N.J. 80, 95 (2004). The recording, although it contained the former girlfriend's statement that she and defendant had been engaged for approximately a year, did not include a statement that she never received the checks that defendant forwarded to the insurance company.

Insofar as defendant's point on appeal that the judge should not have given the jury the recanting witness charge, we note that it would have been improper for the court to fail to give it after admitting the tape. See Gross, 121 N.J. at 16-17; State v. Mancine, 124 N.J. 232, 255-56 (1991).

## III.

A verdict is set aside and a new trial ordered only where failure to do so results in a manifest injustice. State v. Jackson, 211 N.J. 394, 413 (2012). Under the facts of this case, this argument is so lacking in merit as to not warrant discussion in a written opinion. R. 2:11-3(e)(2).

## IV.

There is no doubt that the judge charged the jury twice regarding theft by deception. The judge explained that the error was his inadvertent failure to

A-0462-18

include the entire model charge the first time he read it. The reinstruction tracked <u>Model Jury Charges (Criminal)</u>, "Theft by Deception (N.J.S.A. 2C:20-4)" (rev. Apr. 15, 2013). Defendant made no objection to the charge, so we presume it is adequate. See <u>State v. Belliard</u>, 415 N.J. Super. 51, 66 (App. Div. 2010). Jurors are presumed to follow instructions, and nothing in this case, which has such strong proofs, would cause us to reach a contrary conclusion.

V.

We do not agree that the cumulative errors committed by the court require reversal. None of the points raised on appeal establish any error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0462-18